## WRAY *vs.* COX.

1. The husband is liable, in *assumpsit*, for necessaries furnished to the wife (she being separated from him without fault on her part) while confined in a lunatic asylum, although the credit for them was given to the person who, as agent for plaintiff, made the contract, and paid the expenses, which were afterwards repaid to him by his principal; but if the person who made the contract was acting for himself individually, and not as agent of the plaintiff, the latter cannot, by voluntarily paying the debt, make the husband his debtor.

APPEAL to the Circuit Court of Macon.
Tried before the Hon. ANDREW B. MOORE.

ASSUMPSIT by Mary D. Cox against Albert G. Wray, on the common counts. On the trial, as appears from the bill of exceptions, the plaintiff, who was the defendant's mother-in-law, " introduced evidence that Susan M. Wray, defendant's wife, was sent to her house in October, 1848, by the defendant; that Mrs. Wray was insane when she arrived at plaintiff's house, and so continued from that time during the years 1849 and 1850 ; that during these periods she was separated from her husband, who advanced neither money nor necessaries for her support after July, 1850, and none before except as hereinafter stated; that Mrs. Wray was examined by physicians, at the request of plaintiff and her son, Simpson H. Cox, the brother of Mrs Wray, who gave their opinion that, in her situation, some lunatic asylum was the proper and necessary place for her ; and accordingly she was placed in the lunatic asylum at Columbia, South Carolina, on the 26th of April, 1849, and remained there until December, 1850 ; that plaintiff paid to the agent of the asylum the money sought to be recovered, for necessary board, attention and supplies furnished to Mrs. Wray at the asylum during the years 1849 and 1850, and that they were compatible with the means and circumstances of the defendant. The only evidence on the subject of the contract, and the reason and mode of the payments by plaintiff, was the testimony of Simpson H. Cox and Dr. J. W. Parker, the agent of the asylum, both of whom were examined by interrogatories,

and is to be found in the answer of said Cox to the second cross interrogatory by defendant, and the answer of Dr. Parker to the first and third cross interrogatories by defendant."

The answer of said Cox to the second cross interrogatory is as follows: " He is not interested in said suit; if plaintiff succeeds, witness expects nothing; there was no understanding between witness and plaintiff at no time ; witness and plaintiff advanced the money as it was wanted and demanded; and the reason why these amounts were so advanced (was), that plaintiff had not the means, at times, when the money was wanted, and then witness advanced the money himself; both claim in the same period, that is, 1849 and 1850."

The answer of Dr. Parker to the first cross interrogatory is as follows : " He was made acquainted with Mrs. Susan M. Wray by Judge Carlton and Brailsford, who brought her to the asylum, and also by a certificate from two physicians and a magistrate, and by letters from Simpson H. Cox, Dr. Sims and others. Mrs. Wray was not present on her admission. I inquired whether she had a husband living, and particularly whether she was brought to the asylum with his consent." His answer to the third cross interrogatory is as follows : " Mrs. Wray's expenses were not higher than the amount charged for all of that class of patients, whose circumstances and former associations authorized their being kept distinct from the rude and vulgar. She was, at times, under great excitement, requiring careful watching ; and not unfrequently it was found necessary for her safety that she should be restrained in a recumbent posture on her bed. She was admitted April 26, 1849, and removed December 4, 1850. She was received into the asylum of Simpson H. Cox's responsibility, and we looked to him for payment."

" To rebut evidence of the defendant, the plaintiff offered evidence of Mrs. Wray's insanity from 1844 to the time of her arrival at her mother's in 1848 ; and also offered evidence of the defendant's property, and means, and the value of the same, and that it justified the amount and nature of the necessaries furnished to his wife at the asylum. The defendant offered evidence that Mrs. Wray was of sound mind in the fall of the year 1848, and that, while of sound mind, she committed adultery with a man named Prime, and on that account

he sent her to her mother's in October, 1848; that he furnished her, when she left his house, with $300, and sent with her two servants, whose hire was worth $200 *per annum*; that out of this money her travelling expenses were to be paid, which was done, and the remainder was given to her when at the end of her journey; that under some orders on the application of Mrs. Wray for alimony *pendente lite*, in a suit in chancery brought by Wray against his wife for a divorce, he paid $300 to her in July, 1849, and $350 in July, 1850; that he had had no communication with her since their separation in 1848. There was no evidence that he had made any agreement with any one to furnish Mrs. Wray with necessaries, or to advance money for this purpose, or that she was (*sent to ?*) the asylum at his request; but the evidence was, that this was done without his concurrence, or having anything to do with it, or that he had promised plaintiff to pay the money advanced by her.

" The court charged the jury, after sundry charges not excepted to, that, if Simpson H. Cox carried Mrs. Wray to the asylum, and made the contracts with the agents to supply her board and other things needed by her, and that he would pay for them, and they were supplied at the asylum, and were necessary in her situation, and compatible with the defendant's means, and Simpson H. Cox refused to pay, and the plaintiff advanced the money, she is entitled to recover what she so paid, if Mrs. Wray was insane, and it was proper and necessary that she should be placed at the asylum, and if she was sent off by her husband without justifiable cause; to which charge defendant excepted.

" The defendant asked of the court the following charges :

" 1. If the plaintiff paid this money to the agent of the asylum on a contract made with said agent by Simpson H. Cox, and not on a contract made by her with said agent, then plaintiff cannot recover; which charge the court gave, but with this addition or qualification : unless there was an agreement between Simpson H. Cox and plaintiff, that he was to take Mrs. Wray to the asylum, and plaintiff was to pay her necessary expenses there; in which event she could recover, if the money was paid for necessaries.

" 2. That it would make no matter what arrangement or contracts were made between Simpson H. Cox and the plaintiff.

about paying the money agreed to be paid at the asylum, if the jury believe the testimony of Dr. Parker, and that Simpson H. Cox, and not the plaintiff, made the contract with Dr. Parker, and became responsible for the money to be paid ; which charge the court gave, but with the same qualification as above.

"3. That, if plaintiff paid to the agent of the asylum the money sought to be recovered, for board and other necessaries furnished to Mrs. Wray by that institution, she cannot recover ; which charge the court gave as asked, but with this addition : that, if the amount so paid was required to furnish the necessary board and supplies for Mrs. Wray, then plaintiff can recover.

"4. That, if the jury believe that Dr. Parker told the truth, and such was the fact, when he swore that Mrs. Wray "was received into the asylum of Simpson H. Cox's responsibility, and we looked to him for payment," then plaintiff cannot recover, if the money was paid by her to the agent of the asylum on this contract ; which charge the court gave as asked, but with this qualification : unless there was an agreement between Simpson H. Cox and the plaintiff, that he was to take Mrs. Wray to the asylum, and she was to pay the money required for her necessary expenses ; in which event she could recover, if the money was paid for such necessary expenses."

The defendant excepted to the charge given, and to the several qualifications added to the charges asked; and he now assigns for error these several rulings of the court.

GEO. W. GUNN, ELMORE & YANCEY, and BELSER & RICE, for appellant :

1. The husband is bound by the wife's purchase of necessaries.   This obligation arises from his duty to furnish them, and from her presumed agency, while they cohabit.—2 Roper (H. & W.) margin 110, 111, 114, top 70, 67, 68 ; Chitty on Contracts, 161 ; Hughes v. Chadwick, 6 Ala. 651 ; 2 Bacon's Abr., Baron & Feme, H. 38, 39, 40.

2. In such cases, the contract is not that of the wife, having inherent power as such to bind the husband, but is the contract of the husband, through the wife, because of the presumed agency.—Chitty on Contracts, 161 ; 2 Bacon's Abr. 40 ; Manby v. Scott, decided by the twelve judges, who all agreed on this point, 1 Mod. 124.

Wray v. Cox.

3. This agency arises from the cohabitation ; when, therefore, she leaves his house of her own accord, the law does not continue her presumed agency or authority even to buy necessaries. —2 Roper (margin 114) 70; Chitty on Contracts, 172; Manby v. Scott, *supra.*

4. The authority to the wife is to purchase necessaries only, and it follows that she cannot borrow money to buy the necessaries with.—2 Bacon's Abr. 47; 2 Roper (margin 112) top 69; Chitty on Contracts 169.

5. It also follows, that, if the credit be not given to the husband, but the necessaries are furnished on the credit of .the wife, the husband is not liable.—2 Bacon's Abr. 46; 2 Roper (see note margin 111) top 68; Chitty on Contracts 163; 8 Wendell 544; 8 Johnson 72; 10 *ib.* 38; 12 *ib.* 293; 11 Wendell 33; 3 Campbell 22; 5 Taunton 356. The law never implies a contract to pay for any thing by A, when there is an express contract by B to pay for the same thing. No agreement or contract between Mrs. Cox and her son, can create any right of action in her as against Wray, although she afterwards voluntarily paid for the necessaries.—Fortune v. Brazier, 10 Ala. R. 791.

6. It further follows, that, if the credit be given not to the husband but to a third person, the husband is not liable to the person furnishing the necessaries, and is not liable to the person upon whose credit the necessaries are furnished.—Rutherford v. Coxe, 11 Missouri R. 347.

7. In connection with the above propositions, we rely on the following : that one person cannot make another his debtor without his consent.—Kenan v. Holloway, 16 Ala. 53; Chenault's Adm'rs v. Walker, 22 Ala. ; 5 Ala. 262; Westmoreland v. Davis, 1 Ala. 299.

Applying the above principles to the case, it is evident that the first charge given by the court was wrong, as it assumes that, without any privity between the plaintiff and defendant, or any privity between the plaintiff and the agent of the asylum, or any between her and her son, Simpson H. Cox, she could pay the money agreed to be paid by her son, on his refusal to do so, and thus make the defendant liable to her for the same.

The second charge given, with the addition or qualification,

was also wrong. The bill of exceptions shows all the testimony in relation to the agreements between Mrs. Cox and her son, or between either of them and the agent of the asylum. There is no evidence to be found in it of any agreement on Mrs. Cox's part to pay for Mrs. Wray's expenses; and the charge was, therefore, abstract, and calculated to mislead the jury. The third and fifth charges are liable to the same objection.—Carey v. Hughes, 17 Ala. R. 388; Stephens v. Brodnax, 5 Ala. 259.

But the propositions contained in the second, third, fourth and fifth charges as given, with the qualifications, or additions, are directly at variance with the principles of law as settled by the authorities quoted above.

D. G. CLOPTON, contra :

I. Where husband and wife live apart, without fault on the part of the wife, any person who buys necessaries and furnishes the wife with them, can recover the amount from the husband. 1 Salk. 386 ; 4 Greenl. 261 ; 14 Mass. 227 ; 10 Ohio 365.

II. When a husband turns his wife out of doors, without cause, he gives her credit to the extent of procuring necessaries, and is liable to any person who may furnish them. A contract, made by Simpson H. Cox with the asylum, is not a contract with Wray. Hence, if S. H. Cox refused to advance the money to the asylum, and Mrs Cox advanced the same, the contract between S. H. Cox and the asylum cannot effect Wray's liability to Mrs. Cox. A contrary doctrine would, virtually, be leaving the wife to the voluntary charity of the world.

III. This is not the case of a subsequent payment, after the necessaries had been furnished. The bill of exceptions does not show such to be the fact ; and, in the absence of the fact being shown by the bill of exceptions, the court will draw all reasonable intendments to sustain the charge. By this rule, the court will infer that advance payments were required by the asylum, and this inference is also authorized by the testimony ; for Simpson H. Cox in his testimony, says that both witness and plaintiff advanced the money as it was required and demanded.

If there was an agreement between plaintiff and S. H. Cox that he was to take Mrs. Wray to the asylum, and she would

pay her expenses whilst there, then he was only Mrs. Cox's agent, and she would be bound to the asylum, although S. H. Cox's agency was not known to the agents of the asylum.

GOLDTHWAITE, J.—The contract of marriage carries with it certain incidents, one of which is, that the husband shall supply the wife with necessaries. If he fails to perform this duty, which grows out of this relation, without fault on the part of the wife, any other person may do it, and hold the husband responsible.—Jenkins v. Tucker, 1 H. B. 361; Ambrose v. Kerrison, 4 Eng. L. & E. Rep. 361; Read v. Legard, ib. 523. In such case, the marriage operates as a general letter of credit to the wife, for necessaries; and it makes not the slightest difference, whether a tradesman supplied the articles, or whether any other person provides her with them, by buying them, or contracting for them on a credit. If it were otherwise, where the husband was not known, the wife might starve, as no person having the articles she stood in need of might be willing to let her have them on the credit of her husband. In the present case it is conceded, that the provision made for the wife while in the lunatic asylum, was necessary for her, so that no question arises upon that point; and we think, upon the principles we have stated, that, if any person had contracted for her reasonable expenses while there, the husband would be liable. So, also, if any one acting for another, took her to the asylum, and made the contract, it would make no difference, in law, that the credit was given to him, or that he paid the expenses. He would be acting for his principal, who, by paying or refunding the amount paid by the agent, would be, in law, the party furnishing the necessaries, and the husband would be liable to him. But if the wife contracted a debt for necessaries, it would be the debt of the husband, and a third person could not, by voluntarily paying it, make the husband his debtor. So, in this case, if the brother of Mrs. Wray made the contract, acting for himself, and not for the plaintiff, and the latter voluntarily paid the debt, we do not see how she could recover. The first charge was, therefore, wrong, as it in effect instructed the jury, that, if the plaintiff paid the debt, she could recover, although it was contracted by another person acting for himself alone.

We see no error in the other charges, the qualifications to which brought them within the law as we have stated it.

Judgment reversed, and cause remanded.