## SWEM v. GREEN.

1. Where an appellant tenders his bill of exceptions to the judge within the time limited by the order of the court for its preparation, it is a sufficient compliance with the order, although the judge does not sign it within the specified time.

2. The file-mark on a bill of exceptions, showing the date of its presentation to the judge, is a part of the record.

3. Where goods deposited with a warehouseman were stolen, and the depositor demanded payment for them from him, and he finally agreed to pay a less sum than that claimed, in settlement, but paid only a part of it, and suit was brought for the balance, *held*, that it was immaterial to the issue that he was not originally liable as warehouseman, the suit being brought upon the compromise agreement.

4. A compromise of a doubtful right is sufficient foundation for an agreement, and it is no defense to say that it was without consideration.

*Appeal from County Court of Arapahoe County.*

THE appellee, Jennie Green, who was plaintiff below, caused to be deposited with the appellant, who was a

warehouseman, a box containing various articles of clothing and household goods. While the box remained in appellant's custody his warehouse was entered by thieves, and the box rifled of its contents. Mrs. Green demanded of the appellant, as payment for the loss of her goods, the sum of $250, which she testifies was their value. After considerable negotiation and delay, according to the preponderance of the testimony, the appellant agreed to pay her, in settlement of the claim, the sum of $168, which she agreed to accept. He paid her small sums, at different dates, amounting in the aggregate to the sum of $60; and, after frequent demands for the payment of the balance of the sum agreed upon, the appellee brought suit before a justice of the peace, demanding judgment for the sum of $100. Judgment for the amount of the demand was awarded her by the justice, and afterwards by the county court, on an appeal from the justice's judgment.

Prior to the entry of the judgment in the county court the defendant moved for a new trial, which was overruled, the court assigning in writing the following reasons therefor: "*First*, the court found from the testimony that a settlement had been arrived at between the parties, there being a dispute between them as to whether defendant was liable, and, upon defendant's promise to pay in pursuance of such settlement, found for the plaintiff; and, *second*, the settlement having been made in this way, the court did hold that in this suit it was immaterial whether or not the defendant had been guilty of negligence by which the goods were lost, holding that the settlement by the parties of the dispute between them as to the defendant's liability for the loss was a sufficient consideration for the defendant's promise to pay for the goods a sum much less than plaintiff claimed to be their value."

The appellant testified that plaintiff came to his office for her goods, and that her box had been robbed just be-

fore her visit. That she called again and presented him an itemized account of the lost goods, amounting in value to the sum of $185.45; that he never admitted his liability, either to the plaintiff or any one else, to pay anything on account of said loss, but contended from first to last that he was not legally responsible. He said he had employed a man at night to guard the warehouse; that he had taken as good care of the plaintiff's property as of his own; and that he was not liable, under the law, to pay her anything. He had told the plaintiff, however, that if he succeeded in collecting a certain claim against the railroad company he would pay her something as a present. He also admitted that he had paid her $50 or $60. He also admitted that he had been frequently pressed for payment of the claim, both by plaintiff and by her attorneys.

Respecting the compromise agreement so stoutly denied by the appellant on the trial below, the testimony of Mrs. Green is fully corroborated by her attorney, E. B. Sleeth, Esq., who testified that it was made in his office and in his presence.

Mr. J. W. HORNER, for appellant.

Mr. O. B. LIDDELL, for appellee.

BECK, C. J. Preliminary to the consideration of this case upon the errors assigned, we will pass upon a motion to strike the bill of exceptions from the files, which was reserved until the case should be reached for final consideration. Upon looking into the motion, we are of opinion that the ground thereof is not well assigned. It is that the bill of exceptions was not filed within the time prescribed by the court below. The order of the court was that the appellant have *"fifty days in which to prepare his bill of exceptions."* To comply with this order, it was only necessary, under the adjudications upon this subject, for the appellant to prepare his bill of

exceptions, and tender it to the judge within the fifty days. This duty the appellant performed, but the judge did not sign the bill for several months afterwards. This brings the case within the rule laid down in *City of Denver v. Capelli*, 3 Colo. 236. It was there held that when a party has tendered his bill of exceptions to the judge in apt time, under the order of the court, he has so far complied with the rule as not to be prejudiced by the failure of the judge to actually sign it within the time prescribed. That this bill was presented in apt time is shown by the indorsement or file-mark of the judge thereon, over his official signature, thus: "Presented for signature," etc., "this 3d day of June, A. D. 1882. BENJ. F. HARRINGTON, County Judge."

But counsel for appellee affirm that this filing is no part of the bill of exceptions, and consequently no part of the record; hence that this court cannot notice the same. This bill, certified and signed by the judge, and bearing the aforesaid file-mark thereon, was filed among the papers of the case in the office of the clerk of the court below, and thus became a part of the record. This record, with its indorsements, is now regularly before us by transcript; and while the file-mark in question is not, strictly speaking, a part of the bill of exceptions, yet it performs one of the purposes that a file-mark indorsed on any other law paper performs, viz., it shows the date of its presentation to the proper officer, and necessarily becomes a part of the record. It is an official certificate of the above fact, and therefore competent evidence that the bill was tendered for the signature of the judge within the time allowed.

It has been held that evidence on this point furnished by the record will be considered by appellate courts; also that, in a case where the judge has signed the bill of exceptions, in the absence of evidence that it was not presented in the time prescribed, it will be presumed that it was done in apt time, in furtherance of the principle that

where a party has complied with the rule of court, so far as it was in his power to do so, he is not to be prejudiced because the judge did not sign the bill until after the time fixed has expired.

In *Underwood v. Hossack*, 40 Ill. 98, three days were allowed within which the plaintiff in error might file his bill of exceptions. It was not actually filed within that period, and there was nothing to show when it was presented to the judge. The court said: "The judge having signed this bill of exceptions, we will presume that he would not have done so unless it had been presented to him in proper time."

In affirming the above principle, the same court in *Village of Hyde Park v. Dunham*, 85 Ill. 569, said: "If the bill of exceptions was in fact made or filed under circumstances not authorized by law, motion should have been made in the court below to strike it out of the record; and, that not having been done, we cannot do otherwise than regard it as rightfully a part of the record."

When a judge certified that a bill was not presented to him in proper time, it was held to have been properly stricken out. *Magill v. Brown*, 98 Ill. 235.

It follows, from the foregoing adjudications, that if it appears affirmatively from the certificate or indorsement of the judge, as in this case, that the bill was presented within the time prescribed, it properly constitutes a part of the record, although not actually signed until some time afterwards. The motion to strike out must be denied.

Referring, now, to the errors assigned to the findings and judgment of the court below, we observe that one of the points raised and discussed by appellant's counsel is that appellant was not originally liable under the law, as a warehouseman, for the loss of the goods; the evidence produced in the trial having shown that he was not guilty of any negligence in connection therewith. It is only necessary to say, in answer to this proposition, that

the action is not based on the original liability of the appellant, but upon the alleged compromise agreement, whereby he promised the appellee to pay her a certain sum of money, less than the real value of the goods stolen, in liquidation of her claim.

The first assignment of error alleges that the appellant made no promise to pay for the loss sustained by the appellee, and that, if he did, it was a promise without consideration, and therefore not binding. The decided preponderance of the evidence is to the effect that appellant promised to pay the appellee $168 in liquidation of her claim, which was $250. It is no excuse for failing to comply with this promise, to say that it was made without consideration. Where a claim of this nature is settled by the parties, the validity of the agreement does not depend upon the question whether there was, in fact, an original liability to pay for the loss or not. It is not necessary, in the compromise of a doubtful right, that the parties have settled the controversy as the law would have done. *Fisher v. May's Heirs*, 2 Bibb, 448. It is a well-settled principle of law that the compromise of a doubtful right, though it afterwards turns out that the right is on the other side, where the parties act in good faith, and with a full knowledge of the facts, is valid and binding. The cases announcing this doctrine generally quote approvingly the terse and logical remarks of Lord Hardwicke upon the subject, made in *Stapilton v. Stapilton*, 1 Atk. 10, to wit: "An agreement entered into upon a supposition of a right, or of a doubtful right, though it afterwards comes out that the right was on the other side, shall be binding, and the right shall not prevail against the agreement of the parties; for the right must always be on one side or the other; and therefore the compromise of a doubtful right is a sufficient foundation of an agreement." *Honeyman v. Jarvis*, 79 Ill. 322; *Mill's Heirs v. Lee*, 6 T. B. Mon. 97. It is held in *Curry v. Davis*, 44 Ala. 281, that where a creditor and

his debtor entertain doubts of the validity of the debt, and make an honest compromise of it, a note given by the debtor for the compromise sum agreed upon cannot be contested as lacking consideration. And in *Scott v. Warner*, 2 Lans. 49, it was said that, if a disputed claim for damages be compromised, the settlement is a sufficient consideration for the note given thereon.

In another assignment counsel for appellant argues that the court below erred in finding that there was a *dispute* between the parties concerning the liability of the defendant, and that the settlement of this dispute was a consideration for the promise. It is true, according to the testimony of the appellee and her witnesses, the appellant never disputed his liability to pay for the goods lost. It is equally true, according to the testimony of appellant, that he never *admitted* his liability, but contended from first to last that he was not legally responsible. To hold that there was no dispute between the parties concerning the liability of the appellant, we must reject his statements as unworthy of belief. The testimony of both parties, however, shows that the appellee and her attorneys were insisting upon payment; that she made out an itemized account, amounting to more than the amount finally agreed upon, and presented it to the appellant for payment. It is not important whether the appellant disputed the claim or not. If his testimony that he did dispute it is not true, he may have thought himself liable, or he may have entertained doubts as to his liability, or he may have made the promise to avoid litigation; but whatever his motive may have been, since the testimony shows that he agreed to pay a portion of the claim, and that the appellee agreed to accept such portion in satisfaction of the whole demand, and since the appellant afterwards made sundry payments on account of the claim, he was justly held liable to pay the balance of the amount agreed upon. Judgment affirmed.

*Affirmed.*